**STATE AUTOMOBILE MUTUAL
INSURANCE CO., Appellant,**

v.

**Anna B. OUTLAW, Appellee.**

Court of Appeals of Kentucky.

Nov. 10, 1978.

Rehearing Denied Jan. 12, 1979.

John G. Crutchfield, Louisville, for appellant.

Freeman B. Blackwell, Louisville, for appellee.

Before HOWARD, HOWERTON and PARK, Judges.

PARK, Judge.

The plaintiff-appellee, Anna B. Outlaw, was a pedestrian who suffered serious injuries when struck by an automobile driven by Jerry L. Taylor and owned by Allen L. Taylor. Therefore, Outlaw was entitled to basic reparation benefits under the Kentucky Motor Vehicle Reparations Act (MVRA). KRS 304.39–030(1). However, the Taylor automobile was uninsured, and Outlaw was not a "basic reparation insured" within the meaning of KRS 304.39–020(3). There being no policy of basic reparation insurance applicable to her injury, Outlaw filed a claim with the Kentucky Assigned Claims Bureau. KRS 304.39–160(1)(a). Outlaw's claim was then assigned to the defendant-appellant, State Automobile Mutual Insurance Company, which had the same obligations as though it had issued a policy of basic reparation insurance applicable to her injury. KRS 304.-39–170(2).

The circuit court has entered two separate judgments against State Auto in an action brought by Outlaw. State Auto has prosecuted separate appeals from each summary judgment. A serious procedural question is presented because the second summary judgment was entered after State Auto had filed a notice of appeal from the first summary judgment. On the merits of the appeals, two issues are raised respecting the application of the MVRA: (1) the extent to which State Auto is subject to penalties under KRS 304.39–210 for delay in paying Outlaw's claim; and (2) the extent to which State Auto is entitled to deduct benefits available to Outlaw from other sources in calculating net loss under the provisions of KRS 304.39–160(3).

I

The procedural problem can best be understood by considering the following chronology of events:

| | |
|---|---|
| January 11, 1978 | Summary judgment entered against State Auto "for the sum of 18% interest on all over-due benefits." |
| January 19, 1978 | State Auto files Notice of Appeal from the Summary Judgment of January 11. |
| January 20, 1978 | Outlaw files motion to amend the judgment entered January 11. |
| January 25, 1978 | State Auto files objection to further proceedings on the ground that the trial court lost jurisdiction of the case upon the filing of the notice of appeal on January 19. |
| January 30, 1978 | The circuit court enters a second summary judgment authorizing Outlaw to recover interest at the rate of 18% per annum on the sum of $7,467.69, being the amount of the bill of General Hospital. |
| March 1, 1978 | State Auto files notice of appeal from the second judgment entered on January 30. |

The January 11 judgment recited that it was a final order and that there was no just cause for delay. CR 54.02(1). Despite the language used in an attempt to make it a final and appealable order, we conclude that the initial summary judgment of January 11 was only an interlocutory order which was non-appealable.

The January 11 judgment purports to grant Outlaw a judgment against State Auto "for the sum of 18% interest on all overdue benefits." However, the January judgment does not state which payments were overdue, the amount of such overdue payments, or the date from which interest began to accrue. On its face, the January 11 judgment was so incomplete that it could be deemed no judgment at all. *Wyrick v. Wyrick*, Ky., 243 S.W.2d 1004, 1006 (1951). There was no final adjudication of Outlaw's claim for interest. The circuit court had made no determination concerning the amount of overdue bills for which State Auto would be liable for interest. The January 11 judgment also left open for further determination the date upon which the bills became overdue and from which interest would accrue. The January 11 judgment was no more than an intermediate step toward a final determination of Outlaw's claim for interest. The January 11 judgment was interlocutory, and the circuit court could not make it a final and appealable order merely by reciting the language of CR 54.02(1). *Hale v. Deaton*, Ky., 528 S.W.2d 719 (1975). We conclude that the appeal from the January 11 judgment must be dismissed because there had not been a final determination of any claim asserted by Outlaw in the proceedings.

State Auto asserts that the circuit court lost jurisdiction when State Auto filed its notice of appeal from the January 11 judgment. Because the appeal was then pending in this court, State Auto asserts that the circuit court had no jurisdiction to amend its original January 11 judgment on the issue of interest by the entry of the second judgment of January 30. If the original judgment of January 11 had been a final and appealable order, State Auto's argument would have merit. *Hoy v. Newburg Homes, Inc.*, Ky., 325 S.W.2d 301 (1959); *Monsour v. Humphrey*, Ky., 324 S.W.2d 813 (1959); see also *Johnson Bonding Co. v. Ashcraft*, Ky., 483 S.W.2d 118 (1972).

State Auto's argument overlooks the fact that the original judgment of January 11 was interlocutory and non-appealable. A notice of appeal from an interlocutory judgment does not deprive the circuit court of jurisdiction to render a final judgment. *O'Nan v. Broadus*, Ky., 316 S.W.2d 220 (1958); see also *Fruchtenicht v. United States Fidelity & Guaranty Co.*, Ky., 451 S.W.2d 835, 837 (1969). If we were to dismiss the appeal from the judgment of January 30 on the theory that the trial court had lost jurisdiction because of the pendency of the first appeal, the trial court would inevitably enter a third judgment resulting in a third appeal. There is no justification for such a waste of judicial energy involving needless expense and delay to the litigants. Therefore, we shall consider the merits of the appeal from the judgment of January 30 that adjudged State Auto liable for 18% interest on the original bill from General Hospital in the amount of $7,467.69.

## II

The substantive issues are interrelated and may be discussed together. Outlaw

contends that State Auto is liable for 18% interest under KRS 304.39–210(2) because its delay in paying medical bills was "without reasonable foundation." State Auto asserts that it did have a "reasonable foundation" for delaying payment and that the trial court erred in granting summary judgment. State Auto argues that Outlaw failed to provide "reasonable proof of the fact and amount of loss" as required by subsection (1) of KRS 304.39–210 and that time was required to determine the amount of payments made under the state medical assistance program in order to calculate "net loss" under subsection (3) of KRS 304.-39–160.

Outlaw was injured on August 29, 1975. She incurred a bill of $7,467.69 at Louisville General Hospital for treatment between the date of the accident and October 31, 1975. On July 2, 1976, the Department for Human Resources paid $3,308.06 to General Hospital on the Outlaw bill. This payment was made under the Kentucky Medical Assistance Act. KRS 205.510 et seq.

On August 16, 1976, Outlaw filed an application for benefits under the Assigned Claims Plan. On the claims form, Outlaw stated that she had been treated at General Hospital by "several doctors" and that her "medical bills to date" were in the amount of $7,467.69, which was the amount of the original bill from General Hospital. In her application for benefits under the Assigned Claims Plan, Outlaw stated that the only benefits she received from other sources as a result of her injuries were disability payments of $125 each for the three previous months under social security. No mention was made of the $3,308.06 paid on the General Hospital bill pursuant to the Kentucky Medical Assistance Act. Outlaw's claim was assigned by the Assigned Claims Bureau to State Auto on August 23.

On August 17, 1976, Outlaw filed suit against the Taylors in the Jefferson Circuit Court. On May 27, 1977, a motion was made to amend her complaint to make State Auto an additional defendant. The motion was sustained on June 6. On September 13, 1977, State Auto issued a check payable to Outlaw, her attorney and General Hospital in the amount of the original bill, $7,467.69. This check was delivered to Outlaw's attorney, but it was recalled by State Auto on October 5 when it learned that the amount of the hospital bill may have been reduced by payments under the Kentucky Medical Assistance Act. On October 13, General Hospital informed State Auto that it had received $3,308.06 from the state medical assistance program. One week later, State Auto paid $4,159.63 directly to General Hospital. See KRS 304.-39–210(1).

On September 30, 1977, Outlaw filed a motion for summary judgment against State Auto. In this motion, Outlaw sought attorney's fees in the amount of $1,500 under KRS 304.39–220(1), interest on "all unpaid and late payments" and all "remaining and unpaid" benefits. The amount and nature of the "unpaid and late" payments was not specified in the tendered summary judgment accompanying the motion. However, the affidavits accompanying the motion stated that Outlaw had incurred a bill for treatment at Memorial Hospital in an undisclosed amount and that some kind of claim was being asserted for services rendered to Outlaw by her mother as a result of her injuries. Nevertheless, the only bill ever submitted to State Auto was the original bill of General Hospital. On January 11, 1978, the trial court granted summary judgment against State Auto "for the sum of 18% on all over-due benefits." The question of awarding attorney's fees was reserved. The amended judgment of January 30, 1978, provided:

> IT IS FURTHER ORDERED AND ADJUDGED, That the plaintiff, Anna B. Outlaw, recover interest at the rate of 18% per annum on the sum of $7,647.69, for the period September 16, 1976 to September 13, 1977, this being the amount of General Hospital's bill that was overdue and the delay in payment was without reasonable foundation; . . . . .

The January 30 judgment made no disposition of the claim for attorney's fees. Consequently, the only issue before this court is

the award of interest on the bill of General Hospital.

To encourage prompt payment of claims, the MVRA provides that a reparations obligor may be liable for the payment of 18% interest and attorney's fees if its delay in the payment of "overdue" benefits was "without reasonable foundation." KRS 304.39–210(2) and 304.39–220(1). Whether a payment is "overdue" must be determined under KRS 304.39–210(1) which provides that the time for payment does not commence until the reparations obligor "receives reasonable proof of the fact and amount of loss realized." State Auto asserts that Outlaw failed to provide reasonable proof of loss. State Auto then reasons that no payments could be "overdue" in the absence of proof of loss and that it could not be liable for the 18% interest if no payments were overdue.

■ A proof of loss is intended to provide insurance companies with an opportunity to investigate the claim and to make an intelligent estimate of the company's rights and liabilities before becoming obligated to pay the claim. 14 Couch on Insurance 2d § 49.373 (1965); *Commercial Travelers Mutual Accident Ass'n v. Witte*, Ky., 406 S.W.2d 145, 148 (1966). The initial claim filed by Outlaw revealed the amount of the original bill at General Hospital, but the statement of the claimant alone would not, as a matter of law, satisfy the statutory requirement of "reasonable proof of the fact and amount of loss realized." In order for an insurance company to make an intelligent evaluation of its obligation to pay a bill for medical expenses, a copy of the bill itself should be furnished to the company. The importance of the medical bill was recognized by the legislature. There is a statutory presumption that any medical bill submitted is reasonable. KRS 304.39–020(5)(a). Indeed, in asserting her claim, Outlaw used a form which provided: "Return promptly with any medical bill you have received to date." According to State Auto, it did not receive a copy of the original bill of General Hospital until May 31, 1977, some nine months after Outlaw's

claim was assigned to State Auto. The statute placed the burden on the claimant to provide reasonable proof of the fact and amount of loss realized. In this case, Outlaw cannot require State Auto to assume her statutory burden of providing reasonable proof of loss simply by arguing that State Auto could have obtained a copy of the bill from General Hospital.

■ Nevertheless, State Auto's argument with respect to proof of loss has one fatal flaw. Its argument assumes that the insurance company may sit indefinitely on a claim without incurring any liability for 18% interest or attorney's fees so long as the claimant's proof of loss is inadequate. State Auto ignores the requirement of subsection (5) of KRS 304.39–210 that:

> A reparation obligor who rejects a claim for basic reparation benefits shall give to the claimant prompt written notice of the rejection, specifying the reason.

Implicit in this statute is a duty on the part of the insurance company to make some response to a claim within the time limits contemplated by subsection (1) of KRS 304.-39–210. Otherwise, the claimant may be lulled into the false assumption that he has furnished reasonable proof of loss and that the claim will be paid. If the insurance company does not intend to pay a claim for medical expenses because the claimant has not furnished copies of the medical bills, the company should give the claimant "prompt notice" of the reason why the claim is not being paid. In the absence of such "prompt notice" of the reason for non-payment, the insurance company must be deemed to have waived any question of the sufficiency of the proof of loss for the purpose of determining when an otherwise valid claim became "overdue."

■ In this case, there are genuine issues of material facts. With the present state of the record, it is not possible to determine when Outlaw first submitted a copy of the bill from General Hospital. Likewise, we cannot determine when State Auto first requested copies of medical bills from Outlaw. These issues of fact must be resolved before there can be a finding that Outlaw

had furnished "reasonable proof of fact and amount of loss" or that the requirement had been waived. It was error for the trial court to grant summary judgment finding that payment of the General Hospital bill was overdue.

Moreover, the judgment must be reversed on grounds not related to the question whether payment of the General Hospital bill was "overdue" within the meaning of subsection (1) of KRS 304.39–210. Assuming for purposes of argument that the bill was overdue, the question remains whether State Auto's delay in payment was "without reasonable foundation." Overdue payments ordinarily bear interest at the rate of 12% per annum. Subsection (2) of KRS 304.39–210 imposes the higher rate of 18% per annum only if the delay in payment was "without reasonable foundation."[1] In this case, State Auto asserts that it had a reasonable foundation for delaying payment of the bill of General Hospital. We agree.

■ Under the MVRA, the basic rule for treatment of collateral source payments is set forth in KRS 304.39–120. In determining reparation benefits, only social security and workmen's compensation benefits are deductible in calculating the claimant's net loss. State medical assistance payments are not considered "social security" benefits within the scope of KRS 304.39–120. Even though such benefits are provided under Title XIX of the Social Security Act, the actual payments are not made through the Social Security system. *See* the Commissioner's Comment to Section 11 of the Uniform Motor Vehicle Accident Reparations Act (1972 version). In the ordinary case, the reparations obligor would not be entitled to deduct the amount of any state medical assistance payments in calculating net loss. However, the credit for collateral source payments is much broader when the benefits are being paid through the assigned claims plan.

If benefits are payable through the assigned claims plan, the special rule of KRS 304.39–160(3) authorizes the deduction of

"all benefits or advantages" received by the claimant in calculating net loss. None of the exceptions to this special rule are applicable in this case. Therefore, State Auto asserts that it was entitled to delay payment of the bill of General Hospital until it ascertained the amount of the state medical assistance payments to be deducted under KRS 304.39–160(3). On the other hand, Outlaw contends that no deduction was permissible because General Hospital was under an obligation to refund medical assistance payments to the extent it recovered such sums from third parties.

Whether State Auto was entitled to deduct the state medical assistance payments from the amount of the General Hospital bill is determined by the sequence of events. The hospital bill was incurred between August 29 and October 31, 1975. The medical assistance payments were not made until July 2, 1976. Basic reparation benefits are payable monthly as loss accrues. KRS 304.-39–210(1). Assuming that Outlaw had filed a claim for benefits soon after the accident and that the assigned claims bureau had promptly assigned her claim to State Auto, State Auto would not have had any right to make any deduction for any future medical assistance payments. KRS 304.39–210(3) provides:

A claim for basic or added reparation benefits shall be paid without deduction for the benefits which are to be subtracted pursuant to the provisions on calculation of net loss if these benefits have not been paid to the claimant before the reparations benefits are overdue or the claim is paid. The reparation obligor is entitled to reimbursement from the person obligated to make the payments or from the claimant who actually receives the payments.

However, Outlaw made no claim for benefits under the MVRA until August 16, 1976, *after* the state medical assistance payment of $3,308.06 had been made to General Hospital on July 2, 1976. The medical assistance payments constituted "benefits" and "advantages" actually received by Outlaw.

---

1. Likewise, a reparation obligor would be liable for attorney's fees only if its denial or delay in payment of a claim for benefits was "without reasonable foundation." KRS 304.39–220(1).

We conclude that the trial court erred in holding that State Auto's delay in paying the hospital bill was "without reasonable foundation." Outlaw's application for benefits under the assigned claims program failed to reveal the medical assistance payments although the application form requested information on "Benefits Received From Any Other Source." Whatever may be the relative rights of State Auto and the Department for Human Resources as administrator of the medical assistance program, the record does not indicate that any demand is being put on Outlaw by General Hospital or the Department for any further payments on the original bill. State Auto acted reasonably in delaying payment until it ascertained the net amount due General Hospital at the time it received the assignment of Outlaw's claim.

The judgment of the circuit court is reversed with directions to dismiss any claim for interest at the rate of 18% per annum but without prejudice to any claims for interest at the rate of 12% per annum for the period any amount is determined to have been overdue and unpaid.

All concur.