RENDERED:  FEBRUARY 10, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0197-MR

PROGRESSIVE DIRECT
INSURANCE COMPANY                                                        APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE CHARLES L. CUNNINGHAM, JR., JUDGE
ACTION NO. 18-CI-000872

COURTNEY HARTSON                                                          APPELLEE

AND

NO. 2021-CA-0256-MR

COURTNEY HARTSON                                                CROSS-APPELLANT

CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE CHARLES L. CUNNINGHAM, JR., JUDGE
ACTION NO. 18-CI-000872

PROGRESSIVE DIRECT
INSURANCE COMPANY                                                CROSS-APPELLEE

<u>OPINION AFFIRMING IN PART,</u>
<u>REVERSING IN PART,</u>
<u>AND MODIFYING</u>

** ** ** ** **

BEFORE: DIXON, EASTON, AND JONES, JUDGES.

EASTON, JUDGE: Progressive Direct Insurance Company ("PDIC") appeals an

order of the Jefferson Circuit Court granting summary judgment to Courtney

Hartson and ordering PDIC to pay basic reparation benefits ("BRB")[1] which PDIC

had denied Hartson. These benefits were incurred because of injuries sustained in

a motor vehicle accident ("MVA"). This MVA occurred going on six years ago.

Hartson filed a cross-appeal in which she claims the circuit court erred by not

granting her attorney's fees and fixing interest on the judgment at twelve percent

(12%) rather than eighteen percent (18%). We affirm on both appeals, reversing in

part only to modify the trial court's judgment with respect to a date for the

beginning of the interest awarded.

### FACTUAL AND PROCEDURAL HISTORY

Hartson was involved in a MVA on June 13, 2017, in which she

sustained injuries. At the time of the MVA, Hartson was driving a vehicle

---

[1] BRB is sometimes called personal injury protection or "PIP" benefits, although they are the same thing. They are also referred to as "no-fault" benefits. *Stevenson ex rel. Stevenson v. Anthem Cas. Ins. Group*, 15 S.W.3d 720, 723 (Ky. 1999).

belonging to her grandparents, who were visiting Hartson from Florida. Hartson resides in Louisville and did not have her own auto insurance policy. Hartson was not named as an insured on her grandparents' policy, issued by Southern-Owners Insurance Company ("Southern-Owners"), a wholly owned subsidiary of Auto-Owners Insurance Company ("Auto-Owners").[2] Hereinafter, any reference to Auto-Owners is inclusive of Southern-Owners.

Hartson first sought BRB from Auto-Owners to cover the first ten thousand dollars ($10,000.00) of her medical expenses pursuant to Kentucky Revised Statute ("KRS") 304.39-020(2). Auto-Owners refused to pay BRB to or for Hartson, because she was not a named insured on the Auto-Owners policy, did not live with the insured, and was not a resident of the state of Florida. At that point, Hartson filed the underlying action for BRB naming Auto-Owners as obligor in the Jefferson Circuit Court.

Due to Auto-Owners' denial, Hartson also filed a claim for BRB through the Kentucky Assigned Claims Plan ("KACP") pursuant to Kentucky's

---

[2] This presents the first of two avoidable misnomers of insurance companies in this case. Auto-Owners litigated this case for Southern-Owners, which was never technically a party to this case. No one brought about a substitution of the correct corporate entity. As it turns out, this failure did not result in any inability for the circuit court to correctly determine whether Auto-Owners or Southern-Owners had an obligation to provide BRB for Hartson as compared with another provider of BRB.

Motor Vehicle Reparations Act ("MVRA"). Her claim was assigned to Progressive.[3]

Progressive sent a letter dated October 15, 2018, to Hartson denying her claim because it believed Auto-Owners was responsible for BRB based on the language in its policy. During this time, Hartson also settled her bodily injury claim with State Farm, the insurance carrier for the other at-fault driver involved in the MVA.

Hartson filed a motion for summary judgment against Auto-Owners. The circuit court did not grant or deny the motion, but in an order entered on April 15, 2019, found Auto-Owners was not liable for BRB and, absent any other insurer, the KACP provider would be liable for BRB. The circuit court gave Hartson thirty (30) days to file an amended complaint "bringing into the case whichever insurer [she] feels is liable for BRB." On May 29, 2019, Hartson filed an amended complaint naming PDIC as a defendant.

In June 2019, Hartson received notice of a Medicaid lien. Hartson's Passport Healthcare Plan paid the bill for Hartson's emergency room visit

---

[3] We use "Progressive" hereinafter to encompass both PDIC and Progressive Adjusting Company, Inc. ("PAC"). As explained in detail below, this is, in part, because of the practice during the long history of this case of the parties merely mentioning the difference in names between the two entities without doing anything to confirm by motion practice or otherwise the correct named entity. Progressive litigated this case to the end regardless of any misnomer or mistaken identity. We will hereafter refer to this situation as a misnomer. Because PDIC is the named party, it is the entity subject to the decisions of the circuit court at issue and this appeal.

immediately after the accident. The bill totaled $2,462.00, but the letter did not state the exact amount of the lien.[4] No other medical bills were paid by Medicaid/Passport. Hartson incurred at least $10,000.00 in additional medical bills for treatment.

Hartson filed a motion for summary judgment against Progressive in November 2019, but the matter was continued so that Progressive could take Hartson's deposition. After extensive briefing by all parties and a hearing conducted on two separate days, the circuit court granted Hartson's motion for summary judgment, ordering that Progressive was responsible for Hartson's BRB and imposed interest at 12% from the date it was notified of the claim. Hartson's requests for 18% interest and attorney's fees were denied. Both Hartson and Progressive appealed.[5] Further facts will be developed as necessary.

Progressive appealed arguing: 1) Hartson did not sue the proper party; and alternatively, 2) that she is not entitled to relief because she would essentially be "double dipping" for payment of her medical expenses due to her settlement with State Farm. Hartson then filed a cross-appeal asserting that the

---

[4] The hospital bill in the record shows a Medicaid payment of $467.78 made on June 30, 2017; however, the payment combined with various "Managed Medicaid Adjust[ments]" listed on the bill resulted in a $0 balance.

[5] Both parties named Auto-Owners as an appellee. Auto-Owners filed motions to be dismissed in both appeals. Neither Hartson nor Progressive filed a response. This Court entered an order granting the motion and dismissing Auto-Owners from both appeals on June 8, 2021.

circuit court erred when it denied her requests for attorney's fees and limited the amount of pre-judgment interest to 12% percent as opposed to the 18% percent she requested.

## STANDARD OF REVIEW

When a circuit court grants a motion for summary judgment, the standard of review for the appellate court is *de novo* because only legal issues are involved. *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004). We must consider the evidence of record in the light most favorable to the non-movant (*i.e.*, Progressive) and determine whether the circuit court correctly found there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 780 (Ky. App. 1996).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure ("CR") 56.03. The movants bear the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest*

-6-

*Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991).  A party

responding to a properly supported summary judgment motion cannot merely rest

on the allegations in his pleadings.  *Continental Casualty Co. v. Belknap Hardware*

*& Manufacturing Co.*, 281 S.W.2d 914, 916 (Ky. 1955).

## ANALYSIS

This case turned on the contents of policies and other documents,

which presented no factual disputes.  The questions presented were legal issues.

We agree there were no genuine issues as to any material fact.  The circuit court

did not err in granting summary judgment.

Turning to Progressive's first argument, we begin by addressing the

issue of preservation.  Pursuant to Kentucky Rule of Appellate Procedure ("RAP")

32(A)(4),[6] Progressive does not have a statement of preservation at the beginning

of the argument in its appellant's brief.  It is not the responsibility of this Court to

search the record to find support for Progressive's arguments or where they are

preserved, assuming such exists.  *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006).

The first opportunity Progressive had to present the issue and preserve

the argument was in its answer to Hartson's amended complaint. *See American*

*Founders Bank, Inc. v. Moden Investments, LLC*, 432 S.W.3d 715, 721-22 (Ky.

App. 2014).  Paragraph 5 of Progressive's answer states, in relevant part, that

---

[6] Formerly CR 76.12(4)(c)(v).

"PDIC admits only that [PAC] received assignment of a claim from the Kentucky Assigned Claims Plan."  Nowhere in the answer does Progressive distinguish PDIC from PAC, nor does it specifically state PDIC was not the correct party or that PAC was the correct entity.[7]  At some point in the proceedings, PAC was referred to a servicing company, but it was not clear for whom service was provided in terms of actual insurance coverage.  We must keep in mind that with the KACP we are dealing with an assignment of liability for BRB rather than the issuance of traditional insurance policies for those owning or operating vehicles where the name of the insurer may be easily ascertained from the policy.

The record shows Progressive never filed a motion to dismiss or a motion to join PAC as an indispensable party.[8]  *See* CR 12.02.  Rather, Progressive asserted its argument in footnotes.  Specifically, footnote 2 in Progressive's "Motion to Hold Summary Judgment in Abeyance" states, in relevant part, that

---

[7] We look to Auto-Owners' answer as a contrasting example.  Paragraph 16 of Auto-Owners Answer states, in relevant part, that it is "not the proper party Defendant in interest, and insofar as Auto-Owners Insurance Company did not contract to, nor did Auto-Owners Insurance Company, provide any insurance coverage or [BRB] for the vehicle being operated by [Hartson] on or about June 13, 2017."

[8] "When one litigant believes there to be an indispensable party it should request the court to order joinder by the simple expedient of filing a motion. . . .  [I]n any event, it should be accomplished by a pleading or motion and a brief is neither. CR 7.01." *Cabinet for Human Resources v. Kentucky State Personnel Bd.*, 846 S.W.2d 711, 714 (Ky. App. 1992).  While we recognize Progressive's view it had no duty to act to correct the identity of the sole defendant and that this is not the usual application of the rule regarding addition of an indispensable party, this misses the point when we review Progressive's actions and comparative inactions in this case.

"Hartson has sued an incorrect defendant in her amended complaint. [PAC] was the entity assigned to Hartson's claims through the KACP."

Progressive did not argue this during the hearing on the dispositive motion. Progressive waited essentially until after a decision was made to directly assert the issue. Progressive's initial response in opposition to Hartson's motion for summary judgment stated in the first paragraph that "Hartson certainly has no valid claim against [PDIC], as PDIC is not a proper defendant[.]" Again, Progressive put its argument in a brief footnote. Similarly, any argument regarding PDIC being the incorrect party was limited to a footnote in Progressive's sur-reply in opposition to Hartson's motion for summary judgment. Footnote 1 states, in relevant part: "Hartson's Reply offers no attempt to explain why she is seeking a judgment against [PDIC], rather than the correct servicing carrier for the [KACP]."

> Fundamental to the concept of preservation of trial error in any context is that the trial judge was explicitly made aware of the **action** desired by the party. By definition, an assignment of error cannot be regarded as "preserved" if its **significance** was never brought to the trial judge's attention.

*Smith v. Commonwealth*, 410 S.W.3d 160, 167 (Ky. 2013) (emphasis added).

It is perplexing that, if Progressive deemed the issue as significant as is presented to this Court, it did not file a motion to dismiss or to join PAC as an indispensable party, and instead relegated its argument to footnotes and other passing comments. We also note during introductions at the hearing on Hartson's

motion for summary judgment, counsel stated he represented PDIC, but PAC

"handles claims" through KACP. However, counsel did not raise the issue again

during arguments.

Progressive did assert that PDIC is not the correct entity in its motion

to alter, amend, or vacate the circuit court's order granting summary judgment to

Hartson. This Court recently held:

> [R]eferencing a motion to alter, amend, or vacate in
> support of proper preservation, as Wilburn does here, is
> problematic because "a party cannot invoke CR 59.05 to
> raise arguments and to introduce evidence that should
> have been presented during the proceedings before the
> entry of judgment." *Rumpel v. Rumpel*, 438 S.W.3d 354,
> 365-66 (Ky. 2014) (internal quotation marks and
> citations omitted). We will not consider any arguments
> which were only raised in an appellant's CR 59.05
> motion; *see Ford v. Ford*, 578 S.W.3d 356, 366 (Ky.
> App. 2019).

*D.W. Wilburn, Inc. v. H&H Painting, LLC*, 648 S.W.3d 687, 693 (Ky. App. 2022).

While Progressive's argument that PDIC is the improper defendant

technically appears in the record before us, it would be a stretch to conclude that its

*significance* was ever brought to the trial court's attention prior to entry of the final

judgment or that Progressive ever requested any *action* by the circuit court, and we

therefore conclude it is unpreserved pursuant to RAP 32(A)(4).[9]

---

[9] "Our options when an appellant fails to abide by the RAP are: (1) to ignore the deficiencies and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a) [now RAP 31(H)]; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis*

Our analysis on this point does not end here. The issue of preservation is compounded by other issues related to Progressive's argument Hartson did not sue the correct entity. A motion to file an intervening complaint was filed for PAC *after* the circuit court entered its decision in this case (subject to the motion to alter, vacate, or amend which added more months to the case). The intervention sought was to prolong this case further with a new claim of fraud by Hartson in her attempt to obtain BRB. Remarkably, the motion was filed by PDIC's counsel on behalf of PAC. Previously, Hartson's amended complaint was served on PDIC through the same counsel. At the conclusion of the final hearing in this case on December 1, 2020, counsel for Hartson offered no objection to an order for PAC to be named as a party. Progressive's counsel demurred, basically saying that was not his responsibility, even though PAC was before the circuit court trying to intervene.

---

*v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). Additionally, the Kentucky Supreme Court recently clarified that

> [a] review of both *Hallis* and *Elwell* [*v. Stone,* 799 S.W.2d 46 (Ky. App. 1990)] make clear that the manifest injustice standard of review is reserved only for errors in appellate briefing related to the statement of preservation. If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved. Appellate courts review[ ] unpreserved claims of error on direct appeal only for palpable error. To prevail, one must show that the error resulted in "manifest injustice."

*Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) (emphasis added).

Hartson argued to the circuit court that Progressive has "over forty active entities registered in the state of Kentucky." While there is no direct evidence in the record before us regarding the exact number of entities operating under "Progressive Insurance" in Kentucky, we agree with Hartson the law should not allow Progressive to create a maze of entities to avoid responsibility in litigation whereby BRB obligations are denied and delayed. The record is clear that Progressive, whether technically called PDIC or PAC, was served through counsel that represented both entities and, accordingly, Progressive had notice of the action. And counsel for both fully represented their common interest in avoiding liability in this case.

We see the irony in our discussion of what some would call technicalities to address the mentioned but not pressed question of the correct Progressive entity. Even if we consider the error preserved, we see additional reasons not to allow Progressive's argument to succeed. It is problematic for Progressive, despite its assertion that PDIC is not the correct entity under the broad banner of "Progressive Insurance," because the record before us shows Progressive has aggressively defended this action on the merits.

Progressive took Hartson's deposition and extensively briefed and argued the merits related to Hartson's motion for summary judgment. It was not until the circuit court granted Hartson's motion that Progressive attempted to

substantively argue PDIC was not the correct party. As a result, not only is Progressive's argument unpreserved, Progressive (specifically PDIC) is estopped from arguing this on appeal before this Court because Progressive's argument boils down to what is essentially a misnomer. Both PDIC and PAC are Progressive.

A party may be estopped to assert a misnomer. If the named entity is incorrect, affirmative action is called for. Prior to our modern civil rules, a plea of abatement would be in order. In other words, the judge should be asked not to act until the matter of the name or identity of the party is resolved. A motion to dismiss would accomplish this. *See Studebaker Corporation of America v. Dodds & Runge*, 171 S.W. 167 (Ky. 1914). A litigant should not be able to just mention an issue, take no affirmative action to correct it, litigate the issues in the case for years, and then insist on starting over with a newly named entity.

Progressive did nothing to address the misnomer until after a final order was entered. Where an insurance company divides its responsibilities, as Progressive has done here, there is an incentive to argue forcefully for a position under one name (PDIC) and then, when the litigation does not end favorably, to rely on a technicality such as a misnomer, even if the issue had previously not been properly raised or acted upon. Such practice adds further litigation and other delay, frustrating a primary purpose of BRB and the MVRA to get bills paid first and then let insurance companies argue over who ultimately owes them.

-13-

In the circumstances of this case, any error regarding the name of the Progressive entity was not preserved. Any such error did not result in manifest injustice and does not constitute palpable error. Even if the error was preserved, Progressive is estopped to deny its liability because of its actions in this case.

We next address the merits of Progressive's claims. There is no question Progressive was incorrect in its argument Southern-Owners was responsible for BRB. Southern-Owners was not licensed in Kentucky. It had no obligation to provide BRB for Hartson. KRS 304.39-100(2); *see also State Farm Mut. Auto. Ins. Co. v. Tennessee Farmers Mut. Ins. Co.*, 785 S.W.2d 520 (Ky. App. 1990). The Southern-Owners policy did not contractually add BRB for Hartson. The circuit court correctly rejected the strained argument Southern-Owners still owed coverage under the language of its policy.

Progressive's second argument is that it is not obligated to pay BRB to Hartson because she would be receiving double compensation for her medical bills due to her prior settlement with State Farm. Progressive's argument is twofold. It first contends Hartson never provided reasonable proof of loss. This argument has no basis in fact or law. The record before us reveals that all medical bills were provided to Progressive by Hartson.

> In order for an insurance company to make an intelligent evaluation of its obligation to pay a bill for medical expenses, a copy of the bill itself should be furnished to the company. The importance of the medical bill was

-14-

recognized by the legislature.  **There is a statutory presumption that any medical bill submitted is reasonable**.  KRS 304.39-020(5)(a).

*State Auto. Mut. Ins. Co. v. Outlaw*, 575 S.W.2d 489, 493 (Ky. App. 1978)

(emphasis added).

Similarly, Progressive's argument that "any [medical] bills that are unpaid are so only because Hartson has not paid them"[10] is unpersuasive.  KRS 304.39-210(1) states

> [b]asic and added reparation benefits are payable monthly as loss accrues.  Loss accrues not when injury occurs, but as work loss, replacement services loss, or medical expense is incurred.  **Benefits are overdue if not paid within thirty (30) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized**, unless the reparation obligor elects to accumulate claims for periods not exceeding thirty-one (31) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, and pays them within fifteen (15) days after the period of accumulation.  Notwithstanding any provision of this chapter to the contrary, benefits are not overdue if a reparation obligor has not made payment to a provider of services due to the request of a secured person when the secured person is directing the payment of benefits among the different elements of loss.  If reasonable proof is supplied as to only part of a claim, and the part totals one hundred dollars ($100) or more, the part is overdue if not paid within the time provided by this section.  **Medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant, if the claimant so designates**.

---

[10] *See* page 16 of Appellant's brief.

(Emphasis added.)

The record before us contains Hartson's application for no-fault benefits. In the application, Progressive did not provide Hartson an opportunity to designate whether she wanted the medical providers to be paid directly. An email from Hartson's counsel to a claims adjuster with Progressive dated April 16, 2019, states, in relevant part, Progressive "can either make payment directly to [Hartson] or I can instruct you on how to make payments." This is the same date Hartson's medical bills were submitted to Progressive. However, a subsequent email from Hartson's counsel to Progressive dated September 17, 2020,[11] states "[p]lease make the [BRB] check out to [Hartson] & Adams Legal Group."

Kentucky law requires Progressive to reimburse Hartson for money spent out-of-pocket, which appears to be inapplicable, **or** to pay the medical providers directly. *Medlin v. Progressive Direct Ins. Co.*, 419 S.W.3d 60, 63 (Ky. App. 2013); *see also* KRS 304.39-210(1). Because Hartson had not paid any bills out-of-pocket, she could not be reimbursed directly from Progressive. *Id.* However, we do not interpret *Medlin* to mean that this relieves Progressive of its obligation to provide timely payment directly to the medical providers. In other words, Progressive cannot use the fact Hartson did not pay her medical bills out-

---

[11] This date indicates Progressive took no action to pay bills for almost a year and a half.

of-pocket to avoid its obligation to pay BRB. This is an unreasonable attempt to frustrate the very purpose of the BRB provisions of the MVRA.

The purpose of BRB is to get bills paid without arguments over fault, and this purpose is further served by making sure medical providers are paid for their services, whether directly or by the injury victim. Hartson was entitled to have her medical bills paid promptly. Progressive cannot be allowed to succeed with the argument Hartson never paid any of the bills, so Progressive did not have to pay Harston for her bills and then also argue Progressive was not going to pay the bills directly. Significantly, Progressive has never argued it did not pay Hartson's medical providers because she did not designate payment in that manner.

We now turn to the second aspect of Progressive's argument that Hartson would receive "double compensation" if Progressive paid BRB. Here, Progressive focuses on Hartson's settlement with State Farm in which she received $23,187.78 of a $25,000 policy limit. The circuit court took the settlement into account and ordered that "[b]ecause State Farm would be obligated to reimburse Progressive $1,812.22 [the amount left of the State Farm policy amount] on its subrogation claim, . . . Progressive's obligation for BRB is capped at $10,000 - $1,182.22 = **$8,187.78** but Progressive will have no subrogation claim." The circuit court also ordered "Hartson will have to satisfy Passport's lien for having

paid for the [emergency room] visit and pay the balance of her healthcare bills related to the accident."[12]

Progressive's argument regarding "double compensation" is without merit. It is well-settled law in Kentucky that "[BRB], rather than a tort claim, are the **exclusive remedy** for the first $10,000 in medical expense and work loss sustained by a no-fault plaintiff."[13] *Drury v. Spalding*, 812 S.W.2d 713, 716 (Ky. 1991) (emphasis added). Further, an injured person can seek relief in tort under the MVRA "only for those damages which exceeded the amounts payable as basic reparation benefits." *Carta v. Dale*, 718 S.W.2d 126, 128 (Ky. 1986). Those damages in tort must exceed $1,000.00. KRS 304.39-060. Otherwise, there is no connection between tort liability and the responsibility of a BRB obligor to pay the first $10,000.00 in medical expenses. Our highest court has provided additional clarification:

> Generally, a tort settlement and release does not affect the payment of BRB. A tort settlement and release and contractual BRB are distinct methods of recovery. *See Ammons v. Winklepleck*, 570 S.W.2d 287, 289 (Ky. App. 1978) ("**[Bodily injury] liability coverage and the BRB coverage do not overlap and do not provide duplicate benefits for the same elements of loss**.") (internal quotation marks omitted). Dealing with the two methods of recovery is like "dealing with apples and oranges."

---

[12] Hartson's medical bills exceed the $10,000.00 maximum BRB limit.

[13] Hartson did not claim any work-related losses.

> *Holzhauser v. West American Ins. Co.*, 772 S.W.2d 650,
> 651 (Ky. App. 1989).

*Coleman v. Bee Line Courier Service, Inc.*, 284 S.W.3d 123, 126 (Ky. 2009)

(emphasis added).

Hartson signed a general release when she settled with State Farm.

The release documents did not contain language indicating Hartson intended to

release her BRB carrier or specifically to indemnify for BRB benefits.  This issue

was also addressed in *Coleman.*  Specifically,

> [t]he question in [*Ohio Casualty Ins. Co. v.
> Ruschell*, 834 S.W.2d 166 (Ky. 1992)] was whether the
> plaintiff's own BRB carrier could refuse to pay under a
> general release to a tortfeasor.  This Court held that the
> plaintiff's own BRB carrier could not refuse to pay
> absent specific language agreeing to release or reimburse
> no-fault obligations.  The Court wanted to ensure that **if a
> plaintiff did intend to release her no-fault carrier as
> well, then the release must say so specifically and
> clearly**.
>
> . . . .
>
> Although dicta, this Court correctly concluded that
> an intent to indemnify the tortfeasor against BRB
> recoupment claims should not be inferred in the absence
> of explicit, specific language of agreement.  This is
> especially true in light of the distinctly different nature of
> BRB versus tort liability claims.

*Id.* at 127 (emphasis added).

We note the dicta in *Ruschell* was questioned by those justices

concurring in *Coleman*.  The importance of the separateness of BRB and tort

-19-

liability and the danger of permitting releases of tort liability to require claimants to use those funds to satisfy a non-tort liability obligation is illustrated by this case involving minimum tort liability coverage. A substantial argument may be made (as was made by some of the justices in *Coleman*) that public policy and the obvious purposes of the MVRA should prohibit agreements in any tort release to require the injured party to use tort liability proceeds to reimburse BRB. That issue is not directly before us, and this Court would not have the authority to alter this dicta-announced rule in *Ruschell*.

Stated plainly, under the facts of this case, Hartson's settlement with State Farm for her bodily injury claim has no bearing on Progressive's obligation to pay BRB to or for Hartson. Accordingly, we discern no error in the circuit court's decision that Progressive owes the unpaid BRB.

We now turn to Hartson's cross-appeal. First, she claims the circuit court erred when it imposed interest at 12% rather than 18% under KRS 304.39-210(2). We disagree.

The record before us shows Hartson completed her application for benefits through KACP on or about June 19, 2017. However, it was stamped as received by KACP on August 3, 2018. The delay is explained by the record only to the extent that Hartson was pursuing BRB from Auto-Owners during this time, but the parties do not provide clarification in their briefs to this Court. At the time

Hartson *completed* the forms, she indicated she did not have private insurance, government benefits, other gratuitous benefits, or benefits received from any other source. However, Hartson's emergency room bill was paid by Passport/Medicaid on June 30, 2017 (*i.e.*, shortly after the date Hartson completed the KACP forms). Progressive received assignment of Hartson's claim through KACP on or about August 20, 2018. Progressive initially denied the claim on October 15, 2018, based on language contained in the Auto-Owners insurance policy. At that time, Progressive believed Auto-Owners was responsible for BRB.

KRS 304.39-210(2) states that "[o]verdue payments bear interest at the rate of twelve percent (12%) per annum, except that if delay was without reasonable foundation the rate of interest shall be eighteen percent (18%) per annum." The question is whether Progressive had a "reasonable foundation" to deny or delay Hartson's claim after it received her medical bills on April 16, 2019. A reasonable foundation for delay is defined as either "assertion of a legitimate and bona fide defense by the reparation obligor" or failure of the claimant to supply the obligor with reasonable proof of loss in a timely fashion. *Auto. Club Ins. Co. v. Lainhart*, 609 S.W.2d 692, 695 (Ky. App. 1980); *see also Kentucky Farm Bureau Mut. Ins. Co. v. Roberts*, 603 S.W.2d 498, 499 (Ky. App. 1980).

Importantly, Hartson concedes that Progressive's initial denial of her claim in October 2018, was reasonable because it believed at the time – as did

Hartson – that Auto-Owners was responsible for BRB. In her motion for summary judgment and in her brief to this Court, Hartson concedes that Progressive's initial denial was "reasonable and based on the Auto-Owners insurance policy language."[14] However, some five months later, on March 21, 2019, in an email from a claims adjuster, Progressive agreed to provide BRB to Hartson. Progressive then backtracked as shown in an email dated April 18, 2019, from Progressive's counsel that stated it was "unclear whether [Hartson] had available other 'benefits or advantages.'"

      *Outlaw* is instructive. In that case, because Outlaw's hospital bill was paid by Medicaid prior to the time she sought compensation through the MVRA, that payment constituted benefits and/or advantages to Outlaw. To wit,

> [i]f benefits are payable through the assigned claims plan, the special rule of KRS 304.39-160(3) authorizes the deduction of "all benefits or advantages" received by the claimant in calculating net loss. None of the exceptions to this special rule are applicable in this case. Therefore, State Auto asserts that it was entitled to delay payment of the bill of General Hospital until it ascertained the amount of the state medical assistance payments to be deducted under KRS 304.39-160(3). On the other hand, Outlaw contends that no deduction was permissible because General Hospital was under an obligation to refund medical assistance payments to the extent it recovered such sums from third parties.

---

[14] *See* page 20 of Appellee's/Cross-Appellant's brief.

Whether State Auto was entitled to deduct the state medical assistance payments from the amount of the General Hospital bill is determined by the sequence of events. The hospital bill was incurred between August 29 and October 31, 1975. The medical assistance payments were not made until July 2, 1976. Basic reparation benefits are payable monthly as loss accrues. KRS 304.39-210(1). Assuming that Outlaw had filed a claim for benefits soon after the accident and that the assigned claims bureau had promptly assigned her claim to State Auto, State Auto would not have had any right to make any deduction for any future medical assistance payments. KRS 304.39-210(3) provides:

> A claim for basic or added reparation benefits shall be paid without deduction for the benefits which are to be subtracted pursuant to the provisions on calculation of net loss if these benefits have not been paid to the claimant before the reparations benefits are overdue or the claim is paid. The reparation obligor is entitled to reimbursement from the person obligated to make the payments or from the claimant who actually receives the payments.

However, Outlaw made no claim for benefits under the MVRA until August 16, 1976, after the state medical assistance payment of $3,308.06 had been made to General Hospital on July 2, 1976. The medical assistance payments constituted "benefits" and "advantages" actually received by Outlaw.

*Outlaw*, 575 S.W.2d at 494.

Similarly, Hartson did not make a claim through KACP until after Passport/Medicaid paid her emergency room bill. Payment of the bill constituted "benefits" and "advantages" received by Hartson that were not disclosed on her

-23-

KACP application.  It was not unreasonable for Progressive to investigate Hartson's Medicaid coverage after it received medical bills from Hartson.  Hartson also admits that "[a]ll medical bills were initially provided to [Progressive] on April 16, 2019, which is the date that reasonable proof of loss was provided."[15] (Emphasis in original.)

The circuit court could have concluded that at some point, the litigiousness and delay became unjustified.  Again, this case is about BRB benefits for an MVA that occurred over five years ago.  The policy and purpose of BRB under the MVRA was clearly frustrated here.  The circuit judge carefully evaluated the issues in this matter.  We may not substitute our judgment for the circuit court's.  The circuit court did not err in refusing to award 18% interest.

The circuit court ordered PDIC to pay 12% interest "beginning 30 days after Progressive was notified of the claim."  We must disagree with the circuit court regarding the date.  Pursuant to KRS 304.39-210(1), "[b]enefits are overdue if not paid within thirty (30) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized[.]"  When read in conjunction with KRS 304.39-210(2), it is clear Hartson can only collect interest on overdue benefits.

---

[15] *See* page 16 of Appellee's/Cross-Appellant's brief.

As previously stated, although Progressive received assignment of the claim in August 2018 (*i.e.*, it was notified of the claim at this time), Hartson was in the midst of the underlying litigation in which she claimed Auto-Owners was responsible for BRB. Hartson admits she first provided proof of loss to Progressive on April 16, 2019. This is the date "the reparation obligor receive[d] reasonable proof of the fact and amount of loss realized" pursuant to KRS 304.39-210(1). Therefore, Hartson's benefits did not become overdue until thirty days after April 16, 2019.

Pursuant to KRS 22A.060, we are permitted to modify a judgment. This is appropriate when a minor adjustment must be made. This prevents the further delay of having the circuit court enter another order to be processed by the court clerk. Therefore, we modify the final judgment of the circuit court only to reflect the 12% interest begins thirty days after April 16, 2019 (*i.e.*, the date Hartson's medical bills were first submitted to Progressive).

Hartson next argues she is entitled to reasonable attorney's fees. KRS 304.39-220(1) states in relevant part,

> [i]f overdue benefits are recovered in an action against the reparation obligor or paid by the reparation obligor after receipt of notice of the attorney's representation, a reasonable attorney's fee for advising and representing a claimant on a claim or in an action for basic or added reparation benefits **may** be awarded by the court if the denial or delay was without reasonable foundation.

(Emphasis added.)

The discretionary language of the statute is consistent with precedent which provides that "[d]ecisions regarding whether and how to allocate court costs, as well as whether to award attorney's fees, are within the discretion of the trial court." *Miller v. McGinty*, 234 S.W.3d 371, 373 (Ky. App. 2007); *see also Flag Drilling Co. v. Ergo, Inc.*, 156 S.W.3d 762, 766 (Ky. App. 2005); *Wilhoit v. Wilhoit*, 521 S.W.2d 512, 514 (Ky. 1975) ("[A]n allocation of court costs and an award of an attorney's fee are entirely within the discretion of the court."). We therefore review the circuit court's decision regarding attorney's fees for an abuse of discretion. *Miller*, 234 S.W.3d at 373. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). "Put another way, we will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law." *McClure v. Commonwealth*, 457 S.W.3d 728, 730 (Ky. App. 2015) (citation omitted).

The facts of this case are unusual in that it was not immediately apparent which insurer was the proper BRB obligor. Hartson initially pursued Auto-Owners, but eventually filed a claim through KACP and had the claim

assigned to Progressive more than a year after the MVA. Hartson admits she did not provide proof of loss to Progressive until April 16, 2019, nearly two years after the MVA. Although her benefits are overdue, we cannot say that the circuit court abused its discretion when it did not award attorney's fees to Hartson.

## CONCLUSION

Accordingly, the judgment of the Jefferson Circuit Court is AFFIRMED with the modification of the calculation of 12% interest to begin thirty days after April 16, 2019.

ALL CONCUR.

| BRIEFS FOR APPELLANT/CROSS-APPELLEE: | BRIEFS FOR APPELLEE/CROSS-APPELLANT: |
|---|---|
| Robert L. Steinmetz<br>Alexander J. Kuebbing<br>Louisville, Kentucky | Kevin M. Adams<br>Jasmine R. Chenault<br>Louisville, Kentucky |